# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3828

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Hessam Ghane, also known as Sam | * | |
| Ghane, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 18, 2007
Filed: June 27, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Hessam Ghane was charged with criminal possession of potassium cyanide. The district court[1] found that Ghane was rationally unable to understand the charges against him and was therefore mentally incompetent to stand trial under 18 U.S.C. § 4241. Ghane appeals, arguing that the district court erred by finding him incompetent. We affirm.

_____

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

On February 4, 2003, Ghane was admitted to an emergency room in Overland Park, Kansas stating he intended to kill himself using a solid form of cyanide that he had acquired through his years as a chemist and stored in his home. He consented to a search of his home where police found a bottle under the sink half filled with a powder later determined to contain seventy five percent potassium cyanide. Ghane stated he did not know it was illegal to possess potassium cyanide and claimed he intended to use it in teaching, to conduct experiments, or to commit suicide. He was indicted for criminal possession of potassium cyanide in violation of 18 U.S.C. §§ 229(a)(1) and 229A(a)(1).

The district court ordered that he undergo a competency evaluation. Dr. Robert G. Lucking, a psychiatrist, evaluated Ghane and in an August 15, 2003 report diagnosed him with delusional disorder – paranoid type. Ghane believed the prosecution was part of a wide ranging government conspiracy against him dating back to the early 1990s when he was terminated from the Army Corps of Engineers and purportedly refused to work as a spy for the CIA. Dr. Lucking opined that these delusions rendered Ghane unable rationally to understand the charges against him and mentally incompetent to stand trial. At the October 30, 2003 competency hearing, the parties stipulated to the contents and findings of Dr. Lucking's report and the district court found Ghane not competent to stand trial.

Despite the finding of incompetency Ghane was not committed to the custody of the Attorney General for hospitalization and treatment, pursuant to 18 U.S.C. § 4241(d)[2], because he indicated an unwillingness to accept the antipsychotic medication recommended by the examining experts to be the treatment most likely to restore his mental competency. The United States brought a motion under Sell v. United States, 539 U.S. 166 (2003), for permission to medicate Ghane forcibly.

---

[2] "[Upon a finding that the defendant is mentally incompetent to stand trial], the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility."

The district court issued an order granting the government's <u>Sell</u> motion after receiving the report and testimony of Dr. John H. Wisner, the court appointed psychiatrist. We reversed, stating there was no substantial likelihood the medications would restore Ghane's competency as required under <u>Sell</u>. <u>United States v. Ghane</u>, 392 F.3d 317 (8th Cir. 2004). On January 4, 2005 Ghane was ordered committed to the custody of the Attorney General for evaluation and possible voluntary treatment. Ghane was sent to a Corrections Corporation of America (CCA) facility near Kansas City where he voluntarily accepted antipsychotic medication.

Dr. Lucking evaluated Ghane again and found that the medication enabled him to put aside his belief of government persecution and to discuss his defense against the criminal charges realistically. He recommended the district court find Ghane competent to stand trial, but he warned that Ghane would require further evaluation if the stress of the legal proceedings were to trigger his delusional beliefs. At a July 13, 2005 competency hearing, the parties stipulated to the contents and findings of Dr. Lucking's July 5, 2005 report. The district court found Ghane was competent to stand trial and to assist in his defense. Trial was set for January 9, 2006.

Five days before trial was scheduled to begin, Ghane's attorney contacted the district court with concerns about his competency. At a January 6, 2006 hearing counsel stated that he believed Ghane's core delusional beliefs had returned and referenced Dr. Lucking's July 5, 2005 report warning that the stress of legal proceedings could trigger a reemergence of Ghane's delusional beliefs. The district court ordered Ghane to undergo a competency evaluation conducted by Dr. Lucking, who issued his third competency report on April 12, 2006. In preparing his report Dr. Lucking discovered that a staff psychiatrist had discontinued Ghane's antipsychotic medication when he had returned to the CCA facility in June 2005 because of a concern that the medicine was having a negative effect.

Ghane started taking his medication again in early 2006 and thereafter returned to the "baseline level of functioning" at which Dr. Lucking considered him competent. At the May 2, 2006 competency hearing the parties stipulated to the contents and findings of Dr. Lucking's April 12, 2006 report, and the district court found that Ghane was competent. Trial was reset for July 31, 2006.

In the meantime, the Office of the Chief Disciplinary Counsel of the Missouri Bar had received a letter from Ghane on April 7, 2006 stating, "I have no dought [sic] that my attorneys have sold me to the Prosecutor." It appears the letter was written on March 28, 2006, a date on which Ghane was receiving antipsychotic medication. Dr. Lucking later testified that his April 12, 2006 competency finding was based in part on Ghane's indication that he could work with his lawyers and no longer believed they were working against him, and that he likely would have found Ghane incompetent had he known then about the Disciplinary Counsel letter.

In early July 2006 the court received five pro se letters from Ghane even though he was being represented by counsel. The first contained his proposed witness list, which included several individuals unrelated to the charges. Among these unrelated witnesses were a federal district judge whom Ghane wanted to cross examine concerning his decisions as a Missouri appellate judge and his dismissal of Ghane's employment discrimination claim against the Army Corps of Engineers; an employee of the Corps of Engineers regarding Ghane's 1993 wrongful termination; a CIA agent Ghane allegedly met in May 1993; the lawyer who handled Ghane's discrimination case against the Corps of Engineers; and a former girlfriend. The other pro se letters mainly addressed administrative matters.

Upon receiving notice of the Disciplinary Counsel letter and the five pro se filings, the United States filed a motion to determine Ghane's competency. The district court granted the motion and requested that Dr. Wisner conduct the evaluation

-4-

and prepare a report, which he issued on July 27, 2006. The court held a competency hearing over three days in August 2006.

On August 2, 2006 Dr. Wisner testified in accordance with his July 27, 2006 report. Even though it is possible for an individual with delusional disorder to be competent, he believed Ghane was mentally incompetent to stand trial. Dr. Wisner had examined Ghane in 2003, reviewed his medical records and pro se letters, and attempted to interview him. Ghane refused, stating he believed Dr. Wisner had become part of the conspiracy to persecute him and was working for the government. Dr. Wisner testified that based on his review of this evidence he believed Ghane was paranoid and suspicious of his own counsel, the judge, and the entire judicial process. He concluded that Ghane could not effectively assist his counsel in his defense, rendering him mentally incompetent to stand trial.

On August 10, 2006 Dr. Lucking testified that the Disciplinary Counsel letter and the pro se letters indicated Ghane's active delusions interfered with his ability to work with and assist his lawyers and that Ghane was therefore mentally incompetent to stand trial. Dr. Lucking concluded that adequate doses of antipsychotic agents were not preventing the progression and expansion of Ghane's delusional beliefs. At the time of this testimony, Dr. Lucking had not met with Ghane since March 2006 and had not issued a report regarding Ghane's competency since April 12, 2006.

On August 30, 2006 Ghane testified on his own behalf that he was competent, understood the charges against him, and could work with his lawyers. He attempted to explain that his letter to the Disciplinary Counsel had been written in a moment of anger and that the witness list was relevant to the present charges. He also cited examples of his previous ability to function in the community as an employee of the Army Corps of Engineers and a professor. During the hearing Ghane claimed that he, rather than his lawyer, should cross examine Dr. Wisner and Dr. Lucking because his lawyer had not been present during the evaluations. He also continuously objected to

the manner in which his lawyer presented evidence, despite his lawyer's indication to the court that he had extensively explained to Ghane the procedure for presenting evidence.

After hearing the evidence, the district court found that Ghane's delusions that his attorneys were working against his interest and not providing an adequate defense rendered him unable sufficiently to assist in his defense and therefore not competent to stand trial. The district court also found that although Ghane had a factual understanding of the charges against him, that understanding was not rational because it was premised on his delusion of a government conspiracy working against him, including the doctors, lawyers, and the court.

Ghane complains that the district court erred in finding him mentally incompetent to stand trial because the evidence was insufficient to support such a finding. He argues that the opinions of Dr. Lucking and Dr. Wisner should not have been considered as evidence because they "were not grounded in a current formal psychological or psychiatric examination of Ghane" and because the two doctors disagreed as to the length of time he had suffered from delusional disorder and the role of environmental/social factors in causing that disorder. He also argues there was evidence in the record to support a finding that he understood the charges against him and had "recently cooperated with his attorneys and accepted their advice on key issues." The United States argues that the record developed at the competency hearing sufficiently established that Ghane's delusional disorder rendered him incompetent to stand trial.

Determining whether a defendant is competent to stand trial is committed to the discretion of the district court. United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006). We review the district court's determination of competency for clear error. Id. A defendant is mentally incompetent to stand trial if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the

-6-

proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(d). The district court may base its competency decision on numerous factors, "including expert medical opinions and the court's observations of the defendant's demeanor." United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001). There was sufficient evidence to support a finding that Ghane was incompetent at the time of the August 2006 hearing.

The first prong of the competency test requires the district court to determine if the defendant has "a rational as well as factual understanding of the proceedings against him." United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001), quoting Dusky v. United States, 362 U.S. 402, 402 (1960). The district court found, based on Dr. Lucking's and Dr. Wisner's testimony, that although Ghane had a factual understanding of the charges against him, his understanding was not rational because he believed the charges were part of a wide ranging government conspiracy related to events that occurred in the early 1990s. A district court may rely on one of two competing competency opinions given by qualified experts. United States v. Martinez, 446 F.3d 878, 882 (8th Cir. 2006). We conclude that the court did not err by relying on the doctors' concurring opinions despite the minor differences in their underlying findings as to the length of time Ghane has suffered from delusional paranoia and the role environmental and social factors played in causing that condition.[3]

The second prong of the competency test requires the district court to determine whether the defendant is able to assist properly in his defense. In concluding that Ghane was unable to assist properly in his defense, the district court relied on the doctors' reports and testimony at the competency hearing, Ghane's letter to the Disciplinary Counsel and his five pro se filings, as well as Ghane's behavior over the

---

[3]Ghane's suggestion that the doctors' opinions should not have been relied upon because they "were made without any meaningful recent interviews" is not supported by the record or the case law.

course of the competency hearing, particularly during his own testimony. The district court found that the letters, especially Ghane's proposed witness list, reflected his distrust in his lawyers.[4] The district court noted that although Ghane at one point agreed that these witnesses were not necessary, he renewed his request to call two of those witnesses in an August 14, 2006 pro se motion and during his August 30, 2006 testimony.

Ghane relies on the district court's previous findings that he was competent to stand trial, most recently from June 2005 through January 2006, as evidence that the district court erred by finding him incompetent in August 2006. A competency finding is not static, however, and even when a defendant is found competent at the beginning of a trial, the court "must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001), quoting Drope v. Missouri, 420 U.S. 162, 181 (1975). Ghane's argument is therefore misplaced.

We conclude that the district court did not clearly err in its finding that Ghane was mentally incompetent to stand trial at the time of the August 2006 hearing. There was sufficient evidence in the record to support this finding. The record shows that Ghane has varied between periods of competency and incompetency and that there remains the possibility that with medication and cooperation with his attorneys he may become sufficiently competent to stand trial at some future point. On the record now before the court, however, we affirm the order of the district court.

_____

_____

[4]Ghane argues that the district court should have ignored these letters and filings because of his constitutional right to access the court and to speak freely. Ghane did exercise his right to access the court and he cites no support for his argument that the district court should not have considered his writings in making its competency determination.