# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2756

_____

United States of America,

        Appellee,

v.

Miles Murphy,

        Appellant.

\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.

_____

Submitted: May 13, 2009
Filed: July 17, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Miles Murphy (Murphy) pled guilty to possession of pseudoephedrine with intent to manufacture methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. The district court[1] denied Murphy's motion to withdraw his guilty plea and sentenced Murphy to 300 months imprisonment. On appeal, Murphy argues the district court abused its discretion by denying his motion to withdraw his

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the Report and Recommendation of the Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

guilty plea because Murphy (1) had an ineffective attorney, (2) was incompetent at the time of his plea and did not enter his plea knowingly and voluntarily, and (3) was not legally guilty of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). We affirm.

## I. BACKGROUND

On April 21, 2006, after receiving several complaints and tips related to alleged drug activity, law enforcement went to Murphy's residence. Two males answered the door, and officers arrested one of them on outstanding warrants. Officers then encountered Murphy's fifteen-year-old son and another minor. Officers detected the odor of marijuana on Murphy's son. Murphy's son admitted smoking marijuana and granted consent to enter the son's basement bedroom. Officers retrieved the marijuana and arrested Murphy's son and the other minor. Officers then cleared the house looking for additional occupants. In Murphy's seven-year-old son's bedroom, officers saw an open closet door and a step ladder leading to an attic. The officers detected a chemical aroma near the attic. While checking the attic, one of the officers became nauseous from the chemical fumes and was taken to a hospital for treatment.

Officers seized methamphetamine manufacturing items from the attic. Officers also seized a loaded .38 caliber Derringer pistol, digital scales, drug paraphernalia, and pseudoephedrine pills from Murphy's bedroom. In a vehicle registered to Murphy's girlfriend or spouse, officers found a .22 caliber revolver and numerous items used in the manufacture of methamphetamine. Officers seized 101.13 grams of pseudoephedrine from Murphy's residence.

After officers took Murphy into custody and read Murphy his rights, Murphy admitted he had been manufacturing methamphetamine for the last five years. Murphy told officers he had traded used filters with methamphetamine residue for the .22 caliber revolver, and he traded one gram of methamphetamine for the .38 caliber pistol. Murphy stated he carried the firearms because they came with the nature of the

business. Murphy's fifteen-year-old son reported Murphy sometimes carried a pistol for protection.

Murphy was charged in a five-count indictment. Murphy pled guilty to Count 1, possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1) and (2), and Count 3, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The government dismissed the remaining counts.

In his plea agreement, Murphy admitted he was a felon and that he "possessed these firearms in furtherance of the drug manufacturing activity and used them during, and in relation to, his drug trafficking activity by trading controlled substances for the firearms." Murphy also admitted he had been manufacturing methamphetamine for the last five years, and he cooked the methamphetamine in the attic of his home.

During Murphy's plea hearing on January 11, 2007, the magistrate questioned Murphy under oath regarding medications he was taking and his ability to understand what was taking place:

> Judge: Have you ever suffered from or been treated for a mental illness?
> Murphy: I have anxiety and depression, Your Honor.
> Judge: Are you currently being treated for those?
> Murphy: I currently have no medication, no. I'm all right.
> Judge: Okay. Is there anything about those conditions that interferes with your ability to understand what you're doing here today?
> Murphy: No, Your Honor.

Murphy stated he was not under the influence of any drug, medication, or alcohol, and he fully understood what he was doing at the hearing. The magistrate found Murphy was competent to enter his plea, and Murphy's plea was entered voluntarily. The magistrate filed a Report and Recommendation (R & R) which

recommended the district court accept Murphy's guilty pleas. Murphy did not object to the R & R. On January 26, 2007, the district court entered an order adopting the magistrate's R & R.

On June 19, 2007, Murphy's counsel requested Murphy be evaluated for mental competency. Murphy's motion was granted, and Murphy underwent a mental and psychiatric evaluation. The report, dated November 23, 2007, concluded Murphy "appeared to possess a reasonable factual and rational level of understanding regarding his current legal case. He also appeared to possess the capacity to meaningfully interact with counsel, provided he abstains from the use of alcohol, methamphetamine, and remains medication compliant." The report identified no impairment in Murphy's ability to assist his counsel, and the report also indicated "Murphy appeared to possess a fundamentally accurate factual understanding of his current legal proceedings," including the criminal charges against him and the responsibilities of the judge, prosecutor, and defense attorney.

On January 30, 2008, Murphy filed a motion to withdraw his guilty pleas. The district court held a hearing on the motion and called Murphy's counsel to testify. Murphy's lawyer testified she thought Murphy was competent at the time of his guilty pleas. During her time as a federal public defender, counsel had represented competent and incompetent clients, and counsel recommends clients be evaluated when she has concerns. Murphy's attorney had no such concerns regarding Murphy's competency before his pleas. According to counsel, she first noticed Murphy seemed depressed after the United States Probation Office issued a draft presentence investigation report indicating Murphy was facing significantly more prison time than Murphy expected.

Murphy's lawyer testified that she and Murphy discussed before the plea hearing the possible Fourth Amendment issues stemming from law enforcement's search of Murphy's residence. Counsel and Murphy disagreed about whether to proceed with a motion to suppress. Murphy's lawyer researched the Fourth Amendment issues and

located some cases, but regardless of what the cases said, Murphy decided he did not want his son to testify.

The district court denied Murphy's motion to withdraw his guilty pleas and sentenced Murphy to 240 months imprisonment on Count 1 and a consecutive 60 months imprisonment on Count 3. This appeal followed.

## II.    DISCUSSION

"This court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion." United States v. Rollins, 552 F.3d 739, 741 (8th Cir. 2009) (citing United States v. Maxwell, 498 F.3d 799, 801 (8th Cir. 2007)). A defendant may withdraw a guilty plea before the court imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While the 'fair and just' standard is a liberal one, we are mindful that '[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same.'" United States v. Thompson, 906 F.2d 1292, 1298 (8th Cir. 1990) (quoting United States v. Woosley, 440 F.2d 1280, 1281 (8th Cir. 1971)). If the district court determines the defendant has presented a fair and just reason to withdraw his plea, the court may consider several other factors, such as, "whether the defendant asserts his legal innocence of the charge, the length of time between the plea and the motion to withdraw, and whether the government will be prejudiced by the withdrawal." United States v. Gray, 152 F.3d 816, 819 (8th Cir. 1998) (citation omitted). "However, if a defendant does not present a fair and just reason for withdrawal of a guilty plea no need exists to examine the other factors." Id. (citing United States v. Abdullah, 947 F.2d 306, 311 (8th Cir. 1991)).

Murphy contends the district court abused its discretion by denying Murphy's motion to withdraw his pleas for three reasons: (1) his lawyer was ineffective; (2) as a result of Murphy's alleged mental illness and methamphetamine addiction, he was incompetent to enter a guilty plea, and his pleas were unknowing and involuntary; and

(3) pursuant to <u>Watson v. United States</u>, 552 U.S. 74, 128 S. Ct. 579 (2007), the court was barred from finding Murphy guilty of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). We address each of Murphy's claims in turn.

### A.     Legal Representation

Murphy argues his attorney did not effectively represent him because counsel failed to bring discovery documents to her meetings with Murphy and failed to file a motion to suppress the evidence seized during law enforcement's search of Murphy's residence. "Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal [of a guilty plea] only if [a defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." <u>United States v. McMullen</u>, 86 F.3d 135, 137 (8th Cir. 1996).

Murphy waived the issue of counsel's allegedly deficient failure to bring discovery documents to her meetings with Murphy because Murphy failed to raise this issue in his motion to withdraw his guilty plea. <u>See</u> <u>United States v. Washington</u>, 515 F.3d 861, 864 (8th Cir. 2008) (reasoning, claims not presented "to the district court in the first instance by a motion to withdraw [a] guilty plea" are not "cognizable on direct appeal" (citing <u>United States v. Murphy</u>, 899 F.2d 714, 716 (8th Cir. 1990))). Even if this issue were cognizable on appeal, it is without merit. It is undisputed Murphy's lawyer had access to the complete discovery file and discussed with Murphy the charges against him and the evidence in the case. Murphy fails to explain how his own lack of access to any specific discovery documents affected his decision to plead guilty or prejudiced him in any way. <u>See</u> <u>Abdullah</u>, 947 F.2d at 312 (where the defendant's attorney reviewed the government's case file, defendant's argument for withdrawal of his guilty plea based on defendant's own lack of access to the case file was "easily dismissed"). The fact Murphy did not personally review the discovery file is not a fair and just reason for withdrawal of Murphy's guilty pleas.

Murphy's attorney's alleged failure to file a motion to suppress also does not provide a fair and just reason for withdrawal of Murphy's guilty pleas. It is undisputed counsel and Murphy discussed the search of Murphy's residence, counsel researched the Fourth Amendment issues, and Murphy instructed his lawyer not to file a motion to suppress because Murphy did not want his son to testify. Murphy failed to object to his counsel's performance at the plea hearing, despite knowing counsel had not filed a motion to suppress. Murphy acknowledged under oath that he was fully satisfied with his counsel's representation. See United States v. Newson, 46 F.3d 730, 733 (8th Cir. 1995) ("[Defendant]'s failure to assert any objections to his counsel's performance at the change-of-plea hearing, despite his knowledge" of the availability of a defense, "'refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea.'" (quoting Abdullah, 947 F.2d at 312)). The fact Murphy now regrets his decision not to file a motion to suppress does not constitute a fair and just reason for withdrawal of Murphy's guilty pleas.

### B.    Mental State and Methamphetamine Addiction

Murphy asserts "his mind was unclear and his decision making capacity was impaired" at the time of his guilty pleas because Murphy was (1) not taking medication for a mental deficiency that required medication, and (2) suffering the long term effects of his methamphetamine addiction. Murphy contends he was incompetent to plead guilty and his guilty pleas were neither knowing nor voluntary. We disagree.

"A defendant is competent if []he possesses a 'sufficient present ability to consult with h[is] lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings.'" United States v. Martinez, 446 F.3d 878, 881 (8th Cir. 2006) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). The district court's determination of the defendant's competency may include numerous factors, such as "'expert medical opinions and the court's observation of the defendant's demeanor.'" Id. (quoting United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006)). "The district court's finding that a

defendant is competent is reviewed for clear error." Id. (citing United States v. Robinson, 253 F.3d 1065, 1068 (8th Cir. 2001)).

"Even if suffering from a disease, a defendant's plea is valid if the record demonstrates that he 'understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily.'" Rollins, 552 F.3d at 741-42 (quoting United States v. McNeely, 20 F.3d 886, 888 (8th Cir. 1994) (per curiam)). "Whether [a] plea was knowing and voluntary is a mixed question of fact and law that we review de novo." Gray, 152 F.3d at 819 (citing Easter v. Norris, 100 F.3d 523, 525 (8th Cir. 1996)).

The district court did not err by determining Murphy was competent and his pleas were entered knowingly and voluntarily. Murphy presented the district court with no medical evidence to support his claim he was not taking prescription medication, or that he required medication to be mentally competent at the time he pled guilty.[2] The mental and psychiatric report, prepared approximately ten months after Murphy's guilty pleas, does not describe Murphy's mental condition at the time he pled guilty. To the extent the report is probative of Murphy's mental condition generally, the report identified no impairment in Murphy's ability to assist his counsel and indicated, "Murphy appeared to possess a fundamentally accurate factual understanding of his current legal proceedings," including the criminal charges against him and the responsibilities of the judge, prosecutor, and defense attorney. The report concluded, Murphy "appeared to possess a reasonable factual and rational level of understanding regarding his current legal case. He also appeared to possess the capacity to meaningfully interact with counsel, provided he abstains from the use of

[2]On appeal, Murphy has not even identified the mental illness he claims to be suffering, much less provided documentation of any diagnosed condition or evidence that such condition requires prescription medication. Because Murphy stated at the plea hearing that he suffered from "anxiety and depression," we will assume this is the mental condition Murphy alleges rendered him incompetent to plead guilty.

alcohol, methamphetamine, and remains medication compliant."[3] Nothing in the report indicates Murphy was incompetent, or that his guilty pleas were unknowing or involuntary.

At the plea hearing, Murphy unequivocally stated (1) he was not on any medication, (2) nothing about his anxiety and depression interfered with his ability to understand the proceedings, (3) he was not under the influence of any drug or alcohol, (4) he fully understood what he was doing at the plea hearing, and (5) he was fully satisfied with his lawyer's representation. Murphy's statements strongly support the district court's finding Murphy was competent and his plea was entered knowingly and voluntarily. Finally, none of the testimony at the hearing on the motion to withdraw Murphy's guilty pleas indicated Murphy was incompetent or that his pleas were entered unknowingly or involuntarily. Because all available evidence suggested Murphy was competent and his pleas were entered knowingly and voluntarily, the district court did not abuse its discretion by determining Murphy's alleged mental condition and methamphetamine addiction did not constitute a "fair and just reason" for withdrawing his guilty pleas.

### C. Possessing a Firearm in Furtherance of a Drug Trafficking Crime

Murphy contends, under <u>Watson</u>, the district court was barred from finding Murphy guilty of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). In <u>Watson</u>, the Supreme Court held a person does not "use" a

---

[3]Murphy insists the report's statement that Murphy "appeared to possess the capacity to meaningfully interact with counsel, provided he . . . remains medication compliant" proves that, at the time of his guilty pleas, Murphy required medication to be mentally competent. Even if the report described Murphy's mental condition at the time of the plea hearing, this particular statement is ambiguous at best. We agree with the district court's reasoning it is equally plausible the statement simply means Murphy may *now* encounter mental difficulties if he discontinues a course of medication he was prescribed after the plea hearing.

firearm during and in relation to a drug trafficking crime within the meaning of 18 U.S.C. § 924(c) when he receives the firearm in trade for drugs. <u>Watson</u>, 552 U.S. at __, 128 S. Ct. at 586.

Section 924(c) contains two separate offenses: (1) using or carrying a firearm during or in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime. <u>See</u> 18 U.S.C. § 924(c)(1)(A); <u>United States v. Gamboa</u>, 439 F.3d 796, 810 (8th Cir. 2006). <u>Watson</u> addresses only the first alternative. Murphy was charged with, and pled guilty to, both alternatives. The government concedes, as it did before the district court, that an insufficient factual basis existed to establish Murphy used a firearm during and in relation to a drug trafficking crime. However, the government argues, there remained a substantial evidentiary basis to conclude Murphy possessed a firearm in furtherance of a drug trafficking crime.

"To secure a conviction under § 924(c)(1)(A), the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." <u>United States v. Sanchez-Garcia</u>, 461 F.3d 939, 946 (8th Cir. 2006) (quoting <u>United States v. Hamilton</u>, 332 F.3d 1144, 1149-50 (8th Cir. 2003)). The fact "the defendant simultaneously possessed drugs and a firearm, standing alone," is insufficient to sustain a conviction. <u>Id.</u> (citing <u>United States v. Spencer</u>, 439 F.3d 905, 914 (8th Cir. 2006)) "Instead, the jury must be able to infer that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." <u>Id.</u> at 946-47 (citing <u>United States v. Thorpe</u>, 447 F.3d 565, 568 (8th Cir. 2006); <u>Spencer</u>, 439 F.3d at 914-15).

In his plea agreement, Murphy admitted he "possessed these firearms in furtherance of the drug manufacturing activity[.]" The evidence amply supports Murphy's admission. The .38 caliber Derringer was found in Murphy's bedroom along with digital scales, drug paraphernalia, and pseudoephedrine pills.[4] Following his arrest, Murphy stated he carried the firearms because of the nature of the business, and Murphy's fifteen-year-old son reported Murphy sometimes carried a pistol for protection. Despite the government's concession there was an insufficient evidentiary basis to convict Murphy of the *use* of a firearm during and in relation to a drug trafficking crime, an ample evidentiary basis did exist to convict Murphy of *possessing* a firearm in furtherance of a drug trafficking crime. The district court did not abuse its discretion by determining the Watson decision did not provide a fair and just reason for withdrawal of Murphy's guilty pleas.[5]

Finally, Murphy argues the district court lacked jurisdiction to sentence Murphy for the § 924(c)(1)(A) violation because Watson negates Murphy's guilt. "[A] valid guilty plea forecloses an attack on a conviction unless 'on the face of the record the court had no power to enter the conviction or impose the sentence.'" Walker v. United States, 115 F.3d 603, 604 (8th Cir. 1997) (quoting United States v. Vaughan, 13 F.3d 1186, 1188 (8th Cir. 1994)). Watson does not negate Murphy's guilt or strip the district court of jurisdiction to sentence Murphy. Murphy presents no additional basis

---

[4]Murphy admitted possessing both the .38 caliber pistol and the .22 caliber revolver in furtherance of a drug trafficking crime. However, the indictment lists only the .38 caliber pistol as the basis for the § 924(c) charge.

[5]Even if Murphy had been charged only with using a firearm during and in relation to a drug trafficking crime, Watson does not provide a basis for invalidating Murphy's guilty pleas because Watson was decided after Murphy pled guilty. See Brady v. United States, 397 U.S. 742, 757 (1970) (explaining, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise").

for concluding the district court lacked jurisdiction to impose the sentence, and we see none.

## III.  CONCLUSION

We affirm the judgment and sentence of the district court.

_____